UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JILL HALVERSON, as Personal
Representative of the ESTATE OF
WILLIAM B. HALVERSON, Deceased,

Plaintiff,

Case No.:

vs.

UNITED STATES OF AMERICA,
DEPARTMENT OF VETERANS AFFAIRS,
and VETERANS ADMINISTRATION,

Defendants.
_______________________________________/

# COMPLAINT

Plaintiff, Jill Halverson, as Personal Representative of the Estate of William B. Halverson, sues the Defendants, U.S. Department of Veterans Affairs, U.S. Veterans Administration, and United States of America, and alleges:

1. This is a claim for medical malpractice arising out of the death of William Halverson and is brought against Defendants, the United States of America, the Department of Veterans Affairs, and the Veterans Administration (sometimes hereinafter collectively referred to as “VA” or “Defendants”), pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.

2. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1346 (b). Venue is appropriate in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1402 (b) because the acts and omissions giving rise to this action occurred in this District.

3. Plaintiff has presented her claim to the appropriate Federal Administrative Agency, to wit, the Department of Veterans Affairs, and the department has failed to finally deny or make a final disposition of a plaintiff's claim within six months after it is filed and this Court therefore has jurisdiction pursuant to 28 U.S.C. § 2675.

4. William B. Halverson, the Decedent, was a Veteran of the United States Armed Forces, was entitled to the medical services and treatment from the VA, and had received medical services and treatment from the VA for a number of years prior to his death on February 6, 2013.

5. At the time of his death, William Halverson was lawfully married to Jill Halverson, who, after her husband's death was appointed as the Personal Representative of the Estate of William Halverson. Jill Halverson, in her capacity as the Personal Representative of the Estate of William Halverson, brings this claim against Defendants on behalf of the estate and its survivors as defined by the Florida Wrongful Death Statute.

6. At all times material hereto, Defendants owned, operated, controlled, and maintained the Bay Pines VA Healthcare System, a VA Hospital and Medical Clinic in St. Petersburg, Florida referred to herein as "Bay Pines." Defendants, their agents and employees, accepted William Halverson as a patient, created a doctor-patient relationship with him, and held themselves out as competent to provide hospital, medical, nursing, physician, pharmacy, and custodial care and services for him.

7. Defendants, at all times material and described herein, acted by and through their agents and employees when treating William Halverson and Defendants

agents, employees and servants were acting within the scope of their agency and employment when caring for Mr. Halverson.

8. All applicable conditions precedent, including all pre-suit requirements, to the bringing of this action have been satisfied and the undersigned counsel certifies that he has made a reasonable investigation of the facts and circumstances surrounding the death of William Halverson and the care and treatment provided to him at Bay Pines and that investigation has given rise to a good faith belief that grounds exist for this action against Defendants.

9. At all times material hereto, the Decedent was a patient of Defendants at the Bay Pines V.A. Hospital and Medical Center in St. Petersburg, Florida.

10. On or about July 28, 2008, Decedent presented himself at the Defendants' Bay Pines VA Healthcare System in St. Petersburg, Florida, for an annual physical examination. Dr. Lawrence A. Gaulkin was the Decedent's Primary Care Physician so designated by the defendants at the time. Lawrence A. Gaulkin, M.D. was a physician licensed to practice medicine in the State of Florida, was an employee of Defendants, was acting in the course of his employment, and doing business as a medical doctor at Bay Pines.

11. As part of the Annual physical, Defendants conducted a Fecal Occult Blood Test (FOBT) on William Halverson. The FOBT test results came back with one (1) positive result and two (2) negative test results. Mr. Halverson was not informed by Dr. Gaulkin or anyone else of the positive FOBT test result. In addition, Dr. Gaulkin and

Defendants failed to discuss, recommend, or perform a colonoscopy or any other cancer screening for Mr. Halvorsen.

12. On or about April 2009, William Halverson again presented himself to Dr. Gaulkin, his primary care physician, at Bay Pines for another annual physical examination. Mr. Halverson was again not informed by Dr. Gaulkin or anyone else of the positive FOBT test result. In addition, Dr. Gaulkin and Defendants again failed to discuss, recommend, or perform a colonoscopy or any other cancer screening for Mr. Halverson.

13. On or about April 26, 2011, William Halverson again presented himself to Dr. Gaulkin and Defendants at Bay Pines for another annual physical examination. Dr. Gaulkin continued to be Decedent's designated primary care physician. Mr. Halverson again was not informed by Dr. Lawrence Gaulkin, or anyone else, of prior, positive FOBT result and no further cancer testing or screening was done for colon cancer, and no colonoscopy or similar procedures were discussed, recommended, or performed by Defendants.

14. On or about August 16, 2011, William Halverson again presented himself to Bay Pines and there for the first time saw Dr. Khaw, his newly designated Bay Pines Primary Care Physician. Dr. Khaw reviewed Mr. Halverson's medical records and recognized that he had a previous positive FOBT test for which there had been no subsequent follow-up cancer screening performed as required by the prevailing professional standard of care. Because of the earlier, positive FOBT test and because Mr.

Halverson was then well past 50 years old and had never before had a colonoscopy, Dr. Khaw advised Mr. Halverson to undergo a colonoscopy and scheduled one promptly.

15. On or about September 8, 2011, William Halverson had a colonoscopy performed at the Bay Pines and, as a result of the procedure, tissue suspicious for cancer was obtained and sent to a laboratory for examination and biopsy. Shortly thereafter Mr. Halverson was advised he had a large, cancerous lesion in his colon that needed to be removed surgically.

16. In October 2011, Mr. Halverson was further advised that his cancer had metastasized and had spread to other parts of his body. Surgery was performed to remove the tumor in his colon, requiring hospitalization for sixteen (16) days recovering and another six (6) weeks at home under "home nursing care." In January 2012, William Halverson began five months of chemotherapy. Despite treatment, the cancer metastasized to his liver. By August 2012, the cancer had spread to such a degree that Mr. Halverson's Bay Pines physicians advised him that his condition was terminal and that he had 3 to 12 months to live.

17. William Halverson died on February 6, 2013, at 64 years of age, from the effects of colon cancer, the discovery of which was delayed unreasonably by Defendants' negligent failure to timely inform Mr. Halverson of the 2008 positive FOBT test and to timely recommend and perform appropriate cancer screening and testing.

18. Defendants, acting by and through their agents and employees, negligently furnished, and failed to provide appropriate hospital, medical, nursing, pharmacy, and

custodial care to Decedent, which negligence was a proximate cause of the death of William Halverson.

19. Defendants had an independent obligation and a continuing duty to insure that patients with abnormal FOBT test results are notified in a timely manner to allow for appropriate follow-up, cancer screening and investigation to determine the cause of the positive FOBT results.

20. Defendants owed to William Halverson a duty of reasonable care and a duty to care, treat, and communicate with him in accordance with the prevailing professional standard of care and, in addition, a duty to advise William Halverson of appropriate cancer screening tools, tests and procedures, and a duty to advise him of any abnormal cancer screening test results so that appropriate follow-up and treatment could be performed.

21. Defendants and their agents and employees, including Dr. Gaulkin, breached their duties of reasonable care, were negligent, and breached the prevailing professional standards of care in caring for and treating William Halverson, by among other things:

(a) failing to timely discover, diagnose, treat, and care for William Halverson's cancer;

(b) failing to meet the appropriate, prevailing professional standard of care with respect to William Halverson and the discovery and treatment of his cancer;

(c) failing, until September 2011, to advise and recommend to William Halverson that he should have a colonoscopy because he was over 50 years of age and had never had one;

(d) failing, until September 2011, to advise and to recommend to William Halverson that he should have a colonoscopy following the positive 2008 FOBT test result;

(e) failing, until September 2011, to inform William Halverson of the positive FOBT results following his 2008 physical exam;

(f) failing to perform reasonable and timely cancer screening tests and examinations while William Halverson was a patient at Bay Pines;

(g) failing to timely inform William Halverson of the medical malpractice perpetrated upon his person by VA hospital, doctors, and staff;

(h) failing to properly supervise physicians and staff to ensure that when FOBT test results are positive, there is adequate follow-up to ensure patients such as William Halverson are notified and receive appropriate medical treatment; and

(i) failing to recommend timely treatment and tests for William Halverson's Colon Cancer.

22. Defendants were negligent as described above from at least July 2008 continuing until William Halverson became a terminal patient in 2012.

23. As a proximate result of the negligence described above, William Halverson lost at least 3½ critical years of "early detection." That failure eliminated his ability to timely and effectively treat his cancer condition and ultimately caused his death.

24. But for the Defendants' negligence described above, William Halverson would not have died from cancer, which should have and would have been timely discovered, diagnosed, and successfully treated had the Defendants, and their employees and agents, acted within the prevailing professional standard of care in providing medical care and services to William Halverson.

25. Defendants concealed from Decedent and his family and others material facts that should have been timely disclosed, including Decedent's abnormal test results and condition and said concealment was a proximate cause of Decedent's death.

26. On December 19, 2012, Defendants informed William Halverson that its care and treatment of him had been negligent and provided him with Form 95s with which he was advised to prepare and present to the Department of Veterans Affairs. Mr. Halverson and the survivors here identified submitted Form 95s to the Department of Veterans Affairs dated January 29, 2012. Following Mr. Halverson's death, his Personal Representative submitted Form 95s on behalf of the estate and the claims of the survivors were thereafter amended and resubmitted on May 17, 2013, and again on December 12, 2013.

27. The Department of Veterans Affairs has failed to finally deny or make a final disposition of Plaintiff's claim within six months after the filing of Form 95s by the Plaintiff, the survivors and the estate and the amendments thereto despite having been provided with all requested information and documentation upon which a final determination could and should have been made.

28. The survivors of William B. Halverson, Deceased, as such term is defined under the Florida Wrongful Death Act are:

(a) Jill Halverson, his wife;

(b) Alison Halverson, his daughter, born on May 31, 1989;

(c) Daniel Halverson, his son, born on April 24, 1991; and

(d) Nicholas Halverson, his son, born on October 19, 1994.

29. As a direct and proximate result of the above described incident and specifications of negligence, and the death of William B. Halverson, Plaintiff Jill Halverson, as Personal Representative of the Estate of William Halverson, on behalf of the estate and its survivors, Jill Halverson, Alison Halverson, Daniel Halverson, and Nicholas Halverson, and in accordance with the Florida Wrongful Death Act, have incurred the following damages:

I. Jill Halverson, Wife:

(a) Loss of support;

(b) Loss of services, including lost job opportunity;

(c) Loss of companionship, protection, consortium, pain and suffering; and mental anguish;

(d) Funeral expenses; and

(e) Mental pain and suffering and mental anguish.

II. Alison Halverson, Daughter:

(a) Loss of fatherly companionship, protection, instruction, and guidance;

(b) Loss of support and services, including cost of college education expenses; and

(c) Mental pain and suffering and mental anguish.

III. Daniel Halverson, Son:

(a) Loss of fatherly companionship, protection, instruction, and guidance;

(b) Loss of support and services, including cost of college education expenses; and

(c) Mental pain and suffering and mental anguish.

IV. Nicholas Halverson, Son:

(a) Loss of fatherly companionship, protection, instruction, and guidance;

(b) Loss of support and services, including cost of college education expenses; and

(c) Mental pain and suffering and mental anguish.

V. The Estate of William Halverson:

(a) Loss of earnings;

(b) Loss of prospective net accumulations;

(c) Medical and funeral expenses; and

(d) Fair value of custodial care.

**WHEREFORE**, Jill Halverson, as Personal Representative of the Estate of William B. Halverson, Deceased, and on behalf of the Estate of William B. Halverson, Deceased, and on behalf of Jill Halverson, widow of William B. Halverson, and on behalf of Alison Halverson, Daniel Halverson, and Nicholas Halverson, children of William B. Halverson, Deceased, prays for recovery of money damages against Defendants and for costs and interest as provided by law.

/s/ Alan F. Wagner
ALAN F. WAGNER, ESQUIRE
Florida Bar No. 0374105
Trial Counsel for Plaintiff
Wagner, Vaughan & McLaughlin, P.A.
601 Bayshore Blvd., Suite 910
Tampa, Florida 33606
Telephone: (813) 225-4000
Facsimile: (813) 225-4010
AlanWagner@WagnerLaw.com